WHITE v. WELSH.

1. APPEAL AND ERROR—QUESTIONS REVIEWABLE—MUNICIPAL PUBLIC UTILITIES.

On appeal from dismissal of bill to restrain city and city commission from taking any further action with respect to the construction of a 30-mile pipe line to one of the great lakes, Supreme Court is not concerned with the merits of the undertaking but merely with deciding whether or not the project is an extension of an existing utility or the acquisition of a public utility within the meaning of the constitutional, statutory, and charter provisions (Const. 1908, art. 8, § 25; 1 Comp. Laws 1929, § 2236; Grand Rapids charter, title 8, §§ 27, 28).

2. MUNICIPAL CORPORATIONS—COURTS—ACTION OF CITY COMMISSION.
   Unless the authority of a city commission has been illegally exercised, its action cannot be interfered with by the courts merely because it may not seem to other persons to have been as wise as it ought to have been.

3. SAME—WATER SUPPLY—EXTENSION OF EXISTING SYSTEM—INTAKE CRIB IN GREAT LAKE—30-MILE PIPE LINE.
   The construction of an intake crib in a great lake and of a pipe line and pumping stations to, and increased reservoir capacity in, a city 30 miles away was but an extension of an existing water supply system and a transaction which did not require submission for approval of the electors of the city (Const. 1908, art. 8, § 25; 1 Comp. Laws 1929, § 2236; Grand Rapids charter, title 8, §§ 27, 28).

4. COSTS—PUBLIC QUESTION—EXTENSION OF PUBLIC WATER SUPPLY SYSTEM.
   No costs are allowed in suit to determine propriety of action of city commission in contracting for construction of an intake crib and 30-mile pipe line with pumping stations and increased reservoir capacity without submitting matter for approval of electors, since a public question is involved (Const. 1908, art. 8, § 25; 1 Comp. Laws 1929, § 2236; Grand Rapids charter, title 8, §§ 27, 28).

Appeal from Superior Court of Grand Rapids; Taylor (Thaddeus B.), J. Submitted October 3, 1939. (Docket No. 83, Calendar No. 40,693.) Decided December 20, 1939. Rehearing denied February 14, 1940.

Bill by Harry C. White and others against George W. Welsh and others, comprising the City Commission of Grand Rapids, and City of Grand Rapids, a municipal corporation, to restrain the financing and construction of a water pipe line. Bill dismissed. Plaintiffs appeal. Affirmed.

*Fred P. Geib* (*Clem H. Block*, of counsel), for plaintiffs.

*Ganson Taggart*, City Attorney, and *Harold B. Corwin*, Deputy City Attorney, for defendants.

BUSHNELL, J. Plaintiffs, who are resident taxpayers and water users in the city of Grand Rapids, filed a bill of complaint wherein they sought an injunction restraining the city of Grand Rapids and its commissioners from letting any contracts and taking any further action with respect to the construction of a water pipe line from the city of Grand Rapids to Lake Michigan. Defendants, claiming that the construction of the pipe line is but an extension to the existing city waterworks system, moved to dismiss plaintiffs' bill of complaint. The circuit judge took some testimony, considered the arguments of counsel, and dismissed plaintiffs' bill of complaint. The court said in part that he was unable to come to the conclusion that this was the acquisition of a public utility, and held that the city commissioners of Grand Rapids were well within the authority conferred upon them by the act, Constitution, and city charter in proceeding as they did. In answer to counsel's inquiry, the court stated that the bill of complaint was dismissed upon the proofs submitted on the merits and also upon defendants' motion.

The present source of city water is the Grand River, and the present city water system is complete in itself. The pipe-line project includes an intake crib located below the surface of Lake Michigan and 30 miles of water pipe, 46 inches in diameter, with pumping and booster stations to care for a lift of 162 feet. The estimated cost of the project is $4,100,000, of which $1,845,000 is provided by the federal emergency administration of public works. The testimony shows that the average consumption of water in Grand Rapids is 18,000,000 gallons per day, with a maximum of 40,000,000 gallons, although there have been some peak periods at the rate of 60,000,000 gallons per day. The present city filtration plant is designed to care for 50,000,000 gallons per day,

which is claimed by the city to be inadequate. The storage capacity of the city reservoirs is to be increased from 9,500,000 to 35,000,000 gallons by the construction of two new large reservoirs. Plaintiffs claim the existing water system can adequately serve the present and future needs of the city.

Section 25 of Article 8 of the Constitution of Michigan (1908) provides in part:

"Nor shall any city or village acquire any public utility * * * unless such proposition shall have first received the affirmative vote of three-fifths of the electors of such city or village."

Sections 27 and 28 of title 8 of the city charter provide in substance that the city has power to acquire or construct a public utility subject to the foregoing constitutional provision. 1 Comp. Laws 1929, § 2236 (Stat. Ann. § 5.2079), states that each city may in its charter provide for acquiring public utilities for supplying water subject to the constitutional limitation.

We are not concerned with the merits of the undertaking. The decisive question is whether the project is an extension of an existing utility or the acquisition of a public utility within the meaning of the constitutional, statutory, and charter provisions.

The applicable law has been considered and determined in two cases involving the city of Grand Rapids. The first is *Schurtz* v. *City of Grand Rapids,* 208 Mich. 510. In that case a bill was filed to restrain the city from acquiring the property and franchises of the Grand Rapids Hydraulic Company without an affirmative three-fifths vote of the electors. This company had been furnishing water to a part of the inhabitants of the city for a number of years. In 1915 it offered to sell its properties to the city, which proposition was submitted to the people

and determined adversely by them. Subsequently these properties were acquired by another under mortgage foreclosure. After the adoption of the present city charter, the buyer's assignee proposed to sell his interests to the city for $30,000. Notwithstanding the previous adverse vote of the people and without any attempt to submit the new proposal to the electors, the city commission passed a resolution authorizing the purchase which was subsequently consummated. This court held that the transaction was the acquiring of a utility contrary to the constitutional, statutory, and charter limitations and reversed the dismissal of plaintiffs' bill of complaint. The second case is *Veldman* v. *City of Grand Rapids,* 275 Mich. 100. Abe Dembinsky, Inc., had acquired, by purchase at a bankrupt sale, the property of Berkey & Gay Furniture Company, including a power plant. The city commission determined, in what was claimed to be a rather hasty manner, that this power plant was necessary as an auxiliary to the city pumping station and city lighting plant. The power plant was deeded to the city by Abe Dembinsky, Inc., in consideration of $157,368.24, that being the amount of delinquent city and school taxes then a lien upon the entire Berkey & Gay plant. Certain taxpayers filed a bill of complaint to restrain the city and Abe Dembinsky, Inc., from completing this transaction. This court affirmed the dismissal of plaintiffs' bill of complaint, dividing only upon the method employed. The court was unanimous on the proposition that the purchase of the power plant was not the acquiring of a public utility but was only the extension of an existing utility. In arriving at this conclusion, the court again discussed the provisions of the Constitution, statute and charter which it had applied in *Schurtz* v. *City of Grand Rapids, supra,* although that case was not cited. The court said:

"The judiciary is not charged with supervisory control over the exercise of governmental functions by the city commission of Grand Rapids. It is not the business of courts to act as city regulators and, unless the authority of the representatives of the citizens of Grand Rapids has been illegally exercised, their action cannot be interfered with merely because it may not seem to other persons to have been as wise as it ought to have been." Citing *Torrent* v. *Muskegon Common Council,* 47 Mich. 115 (41 Am. Rep. 715).

The court, in the *Veldman* opinion, reviewed many authorities and concluded that the city commission had acted within the scope of its authority and had not violated the Constitution, statutes, or charter in so doing.

There is no difference in principle between the acquiring of a stand-by pumping station and the building of a pipe line from Grand Rapids to Lake Michigan. The property that was to be purchased in the *Schurtz Case* was an entirely independent water system.

The intake crib, pumping stations, pipe line, and increased reservoir capacity can be used only in connection with, and is but an extension of, the existing water system. As said in the *Veldman Case*:

"The entire transaction was one for the city commission to act upon. It acted and we cannot find on the record before us it violated the Constitution, statutes or charter of the city in so doing."

The decree of the trial court is affirmed, but without costs, a public question being involved.

BUTZEL, C. J., and WIEST, SHARPE, POTTER, CHANDLER, NORTH, and McALLISTER, JJ., concurred.