**HENDERSON, Administrator, Office of Price Administration, v. MORGAN et al.**

No. 421.

District Court, D. Utah, Central Division.

Feb. 15, 1943.

442

John A. Carroll, Regional Atty., Floyd F. Miles, Regional Enforcement Atty., Max D. Melville, Regional Litigation Atty., and Edward J. Scheunemann, all of Denver, Colo., for plaintiff.

Elias Hansen, of Salt Lake City, Utah, for defendants.

KENNEDY, District Judge.

This is a suit on behalf of the Administrator of the Office of Price Administration seeking an injunction against defendants in the matter of violating Regulation No. 35 in connection with the Provo, Utah, Defense Rental Area under the Emergency Price Control Act of 1942, 50 U.S.C.A. Appendix, § 901 et seq.

The cause went to trial upon issues joined between plaintiff and defendants and evidence was taken. At the close of the trial, on account of counsel being pressed for time, no oral argument was had, but upon request the matter was allowed to be presented through trial briefs. These have now been submitted.

Perhaps, at the outset, the final determination of the cause may be somewhat clarified by an announcement of the court of its views upon some of the major issues presented. The suit is brought for injunction under Section 205(a) of the Emergency Price Control Act, which seems to be one of the avenues afforded the Administrator to secure compliance with the Rent Control Regulations. The complaint is in the form of thirty-three counts, each involving a separate and distinct alleged violation of Regulation No. 35. At the trial, the court suggested that the complaint involved actually thirty-three different lawsuits to which exception was taken by the plaintiff, inasmuch as it was sought generally to secure injunctive relief against the defendants growing out of a variety of so-called violations along similar lines. It will not be necessary to elaborate further on which, if either, contention is correct, except to say that in settling the questions of fact separate and distinct evidence was required to be taken in connection with

each alleged violation and in this respect, at least, the different charges each constituted a separate lawsuit.

At the outset, it may be observed that there are few precedents, so far as court decisions are concerned, to guide the litigants and the court in resolving the issues at hand. We have the decision by a three-judge court of Kansas in the Tenth Circuit, Henderson v. Kimmel, D.C., 47 F. Supp. 635, which holds the act itself constitutional. However, there is no contest presented upon that point in the present controversy.

■ One of the contentions of defendants seems to be that the burden was on the Rent Director of the area to take whatever steps he might think necessary in the regulation of rents based upon the landlord's registration statements, which were in his hands, and that taking no action, it relieved the defendants of any effort to secure his approval of a modification in maximum rents or decrease of services. I am of the opinion that this view is erroneous. Registration certificates are required to put the Rent Director in possession of the facts in regard to the rental arrangements of each property, and be the better advised to take any action which he might desire to take. But, it in no way supersedes the requirement for the landlord to petition for modification of basic rentals, or to assume that such statements represent a satisfactory adjustment, if for any reason there was a desire for a change in the basic rent of any premises fixed as of March 1, 1942. In order to secure any modification, it was obligatory upon the landlord to petition the Rent Director for any change sought to be made except in specific instances.

■ Another controversial point involved in the suit, inasmuch as some of the counts concern the use of garages, is as to whether or not the Act and the regulations purport to cover this class of service. It is pointed out by the defendants that they are not specifically mentioned as included in the term "services" under Section 7 of 1388.3063; but this regulation has a clause which includes, "And any other privilege or facility connected with the use or occupation of housing accommodations." It may well be that garages can definitely be eliminated from inclusion in the term "services" if such is the desire and intention of a landlord. But in a case where the landlord himself in renting property

specifically includes the use of a garage, and the tenant rents the property with such service included, it is a reasonable conclusion that such service comes within the general definition. This is true in the case at bar, as some of the counts of the complaint involve the "adding to rents" or "diminishing service" by granting or taking away garage privileges. Such action does not rest in the discretion of the landlord, but consent must be obtained first from the Director.

 Argument is directed to the point as to whether or not in this case an injunction, if granted, should be general in the sense that the defendants should not only be restrained from the violations which have been proven, but also from any violations of a similar nature in the future, in which latter event the door would be open for a contempt proceeding against defendants for violation of the injunctional order. There is no doubt that where the circumstances will justify it, the court has the power to make an injunction general. In my opinion, this should be in cases where there is a continued attempt to circumvent the law and the regulations, and utter disregard of the provisions of the law with a studied attempt on the part of the landlord to take matters in his own hands, or where the circumstances justify a conclusion that there is danger in the future of continued violation. As was said in National Labor Relations Board v. Express Publishing Company, 312 U.S. 426, 61 S.Ct. 693, 700, 85 L.Ed. 930, "To justify an order restraining other violations it must appear that they bear some resemblance to that which the employer has committed or that danger of their commission in the future is to be anticipated from the course of his conduct in the past." In the present case, I am of the opinion that the circumstances here are not such as would satisfy these requirements in awarding a so-called general injunction. As a matter of fact, the lack of cooperation between the landlord and the Rent Director has largely been the cause of presenting the case to this court.

The fact is that this type of legislation is entirely new to the American people. They have not in the past been used to this type of regimentation, and it is not strange that it will take some time to bring the matter clearly to their understanding that this is a war measure in which they are required to do certain things in connection with their own property which they have never heretofore been required to do. For this reason, the administration of the Act by those in charge should be exercised with the greatest degree of patience, care and sympathy in solving the difficult problem. The Director himself has not testified in this case, but there is evidence which tends to show that not only on the part of the landlord, but on the part of the Director, there has been lack of cooperation. Inspectors have examined properties and talked with tenants and, according to the testimony, advised tenants what they should do in regard to payment of their rentals. This has brought about loose administration, as manifestly it is the function of the Director and not inspectors to make orders concerning rentals. The landlord has assumed that he still has prerogatives which he has exercised in connection with the rental of his properties, in which he did not have to consult or secure the consent of the Rent Director. In this, I am of the opinion that he has been mistaken. Landlords owe it to themselves and their country to follow faithfully the Price Control Act which is strictly a war measure considered by the Congress necessary for our economic preservation. Here, I am of the opinion that no general injunction will be necessary, and that the attitude of the defendants in the future will be that of attempting to comply with the regulations as they have been interpreted. The registration statements made by the landlord condemned as false in some particulars, can perhaps more satisfactorily be designated as misleading in some instances because of the fact that the landlord felt that on account of certain conditions the statements he made in regard to the basic rents were correct. With this discussion of general principles, the immediate matters for decision can be more readily disposed of.

 At the trial the court indicated a finding for defendants in regard to one of the counts alleging unlawful eviction proceedings, so as to expedite the situation for the benefit of the litigants, although it will necessarily have to be disposed of in the court's general findings. This count is No. 1, and involves the attempted eviction of one Klink. This circumstance involved the right of the defendant to evict in accordance with the regulations. Testimony developed that there was an honest and well-

defined desire to remodel the premises in question, for which materials and equipment had already been purchased. Consent had been secured from local authorities and eviction proceedings instituted, but subsequently dismissed, on a technicality because future rent had subsequently been inadvertently accepted. The only evidence to the contrary involved some "bickering" between the wife of the tenant and the wife of the landlord, which afforded no substantial ground for holding that the defendant was attempting to evict through ulterior motives. This count of the complaint is, therefore, not sustained.

■ Some of the other counts involve the question of whether there were capital improvements in the premises, as set forth in counts No. 19 and 20. Some of these improvements were of a simple repair nature, but there is involved a certain amount of change which in my opinion brought them within the category of capital improvements; particularly, the installation of a new drain connecting with the sewer, establishing a hand rail on the back stairs, and the installation of an automatic gas heater, which should be liberally classified as capital improvements because they are in excess of what might be called mere repairs.

Some of the other counts were at the trial withdrawn or no evidence offered in support of them. The counts upon which evidence was taken or facts agreed upon seem to me to be capable of disposition in a very simple manner by this memorandum as the basis for subsequent findings of fact and conclusions of law. All counts of the complaint, with the exception of those withdrawn or upon which proof was not offered, and the eviction and capital improvements counts above discussed will be sustained and injunctive relief awarded; and as to those excepted counts, the finding will be in favor of defendants. The findings adverse to the defendants will be without prejudice to the defendants to apply to the Rent Director for modification of rents or decrease of services, and likewise, in such instances, the defendants will be required within twenty (20) days after the entry of judgment to file with the Rent Director corrected registration statements in accordance with the findings of this court.

An order may be entered that findings of fact and conclusions of law will be prepared and submitted by counsel for the plaintiff in collaboration with counsel for defendants in harmony with this memorandum within twenty (20) days after its date, together with a judgment in accordance with said findings and conclusions.