Rockingham, ⎱
May 5, 1953. ⎰  No. 4208.

FRED C. LEAVITT & a. v. NORTH HAMPTON & a.

*William P. Fowler* (by brief and orally), for the plaintiff.

*Edward R. Hale, Arthur L. Brown* and *Paul A. Good* (of Massachusetts) (*Mr. Brown* orally), for a majority of the water committee.

*George R. Scammon* (by brief and orally), for the intervenors.

KENISON, C. J. As a preliminary matter of procedure, it may be noted in this type of controversy that a petition for a declaratory judgment is a proper method of determining the legality of the proposed expenditure of public funds. *Chronicle &c. Pub. Co.* v. *Attorney-General,* 94 N. H. 148, 150; *Vantine Studio* v. *Portsmouth,* 95 N. H. 171. The fact that injunctive proceedings might be an alternative method of determining the question does not preclude the use of declaratory judgment procedure. *Clapp* v. *Jaffrey,* 97 N. H. 456. See *Lisbon School District* v. *District,* 96 N. H. 290, 292. Nor can any valid objection be raised to an appropriation of town funds which is made conditional upon the determination of its legality by the Supreme Court. *Reed* v. *School District,* 91 N. H. 209; *Keene* v. *Martin,* 96 N. H. 504, 506.

All of the votes of the town of North Hampton purport to be taken under Laws 1943, chapter 160, as amended, which provides that towns may establish capital reserve funds. Section 1 of the act reads as follows: "Any town . . . as provided by section 2, may raise and appropriate money for the establishment of a capital reserve fund for the financing of all or part of the cost of (a) the construction, reconstruction or acquisition of a specific capital improvement, or the acquisition of a specific item or specific items of

equipment, or (b) the construction, reconstruction, or acquisition of a type of capital improvement or the acquisition of a type of equipment." Section 8 of the act provides that the trustees of trust funds shall have custody of the capital reserve fund and section 9 provides that expenditures from the fund shall be made only in connection with the purposes for which the fund was established or as amended as provided by section 10. Section 10 of the act provides that no change shall be made in the purpose for which a capital reserve fund is established until authorized by a vote of two-thirds of all the voters present and voting at an annual town meeting. This statute is one of the postwar planning statutes which were adopted by a majority of the states to enable municipalities to use surplus money for specific capital improvements. 1943 Annual Survey of American Law 219. Municipal Year Book, 1946, *pp.* 191, 192; Fordham, Local Government Law (1949) 433. Unlike similar statutes in other states the New Hampshire act contains no definition of "capital improvement" or "of a type of capital improvement." The original capital reserve act has been extended and broadened on several occasions but none of the subsequent amendments attempt to define capital improvements. Laws 1945, *c.* 35; Laws 1947, *cc.* 8, 91; Laws 1951, *c.* 106. In the absence of any definition of a capital improvement as used in the act the term "capital improvement" must be taken in its ordinary sense of a permanent improvement or betterment as distinguished from ordinary repair or current maintenance. See *Henderson* v. *Morgan,* 54 F. Supp. 441, 444; *T. K. Harris Co.* v. *Commissioner of Internal Revenue,* 112 F. (2d) 76, 79. The original vote taken at the annual town meetings in 1945 and 1946 for the construction of a water works system was for a capital improvement within the meaning of Laws 1943, *c.* 160, as amended.

Although in the first instance the town had established its capital reserve fund for the construction and acquisition of a water works system, it changed its plan in 1949 to procure by contract a new water main from the existing main of the Hampton Water Works Company to Atlantic Avenue and thence westerly. This change of purpose was authorized by a vote of two-thirds of all the voters present and voting at an annual town meeting and met all the requirements of Laws 1943, *c.* 160, *s.* 10. If the vote taken at the special meeting in 1951 is of doubtful validity (R. L., *c.* 51, *s.* 5) it becomes immaterial in view of the subsequent vote of the town at the annual meeting in 1953. If the 1952 vote was merely a confirmation of the 1949 vote so that no change of purpose was involved, a

two-thirds vote was not required but in any event the validity of the town's actions is to be determined by its final and superseding vote in 1953. That vote clearly shows that it is a confirmation and continuation of the 1949 vote and that it was approved by a two-thirds vote at an annual meeting even though no change of purpose was involved and a majority vote would have been sufficient. See Mattison, Post-War Reserve Funds in Rhyne, Municipalities and the Law in Action (1944) 414-451.

The trustees of trust funds and a majority of the water committee take the position that the town's actions are valid and should be upheld. The intervenors maintain that however laudable the town's objectives may be, it has no power to contract with the Hampton Water Works Company for the water main extensions and hydrants, that it is not a capital improvement and is in violation of *Art.* 5 of Part II of the New Hampshire Constitution. "Towns have only the powers which the state grants them." *Eaton* v. *Bragg*, 96 N. H. 407, 408. However towns have specific authority to appropriate money to "provide means for the extinguishment of fires." R. L., *c.* 51, *s.* 4 XIII; *Keene* v. *Roxbury*, 97 N. H. 82, 84. Together with this authority they have the power to "make any contracts which may be necessary and convenient for the transaction of the public business of the town." R. L., *c.* 51, *s.* 3. The power of towns to accomplish a public function in a practical and economical way have generally been upheld in this state. *Blood* v. *Electric Co.*, 68 N. H. 340, 341; *Fournier* v. *Berlin*, 92 N. H. 142, 144, 145; *McMillan* v. *Noyes*, 75 N. H. 258, 263; *Leary* v. *Manchester*, 91 N. H. 442, 446; *Clapp* v. *Jaffrey*, 97 N. H. 456, 458; *Shea* v. *Portsmouth*, 98 N. H. 22. The foregoing statutes and decisions are adequate authority for the town to contract for fire protection and a supply of water and a contract for such services is for a "type of capital improvement" within the meaning of the capital reserve statute. Laws 1943, *c.* 160, *s.* 1 (b).

Although a contract for fire protection and a water supply is for a type of capital improvement, it is argued that it has not been an "acquisition" of the town since the water facilities and appurtenances are owned by the Hampton Water Works Company. While in a primary sense acquisition means to become the owner, the term is broad enough to include the right to the benefits of a type of capital improvement without ownership and title. See *Robbins* v. *Rapid City*, 71 S. D. 171; *White* v. *Treasurer of Wayland*, 273 Mass. 468; *White* v. *Welsh*, 291 Mich. 636.

Article 5 of Part II of our Constitution prohibits "any town to loan or give its money or credit directly or indirectly for the benefit of any corporation having for its object a dividend of profits or in any way aid the same by taking its stock or bonds." Towns may not make gifts, donations, or subsidies to private corporations and utilities nor may it pledge its credit or invest its public funds in any such corporation or utility. *Eyers Woolen Co.* v. *Gilsum*, 84 N. H. 1; *Opinion of the Justices*, 85 N. H. 562. In the present case the town has contracted for a needed public service pursuant to a tariff of general application under the jurisdiction of the Public Utilities Commission and this is not an investment of public funds in a private enterprise within the meaning of the constitutional prohibition. *Runnemede* v. *New Jersey Water Co.*, 123 N. J. L. 383. "Aid to a utility is forbidden except in protection of the public welfare and interest. And the protection must be in a needed service furnished the public by the utility as a condition of the aid." *Opinion of the Justices*, 88 N. H. 484, 488. The town's actions are legal and the "full authority" delegated to the water committee permits exercise of the town's contractual powers to provide for fire protection and an extension of the water supply.

*Case discharged.*

All concurred.