EBY v LANSING BOARD OF WATER AND LIGHT

Docket No. 71522. Argued June 9, 1983 (Calendar No. 19).—Decided
   July 22, 1983.

   Alvin Eby and other residents of Lansing brought an action in
   the Ingham Circuit Court against the Lansing Board of Water
   and Light and the Michigan Public Power Agency, seeking a
   judgment declaring void agreements between the board and the
   agency which provided that the board would purchase electrical
   power to be supplied by the agency from an electric generating
   plant under construction by the Detroit Edison Company, the
   Belle River 1 project, in which the agency had contracted to
   purchase an undivided interest, and seeking to enjoin the issue
   of bonds by the agency to finance the purchase. The plaintiffs
   claimed that the agreement between the board and the agency
   amounted to an acquisition of a public utility by the board
   without approval by the voters as required under the Michigan
   Constitution. The court, Robert Holmes Bell, J., granted the
   defendants' motions for summary judgment on the ground that
   the plaintiffs had failed to state a claim upon which relief could
   be granted. The Supreme Court granted the plaintiffs leave to
   appeal prior to decision by the Court of Appeals.

   In a unanimous opinion by Justice Levin, the Supreme Court
   *held:*

   The plaintiffs did not state a claim upon which relief can be
   granted. The board has not, by participating in the Belle River
   project through the Michigan Public Power Agency, acquired a
   public utility, and the prediction that in 1992 the board will no
   longer use some of its electric generating facilities is not an
   allegation that the board has or might dispose of any asset
   needed to continue its operation.

   1. The Board of Water and Light is an agency of the City of
   Lansing. The Michigan Public Power Agency is a public corpo-
   ration whose members include Lansing and other cities that
   operate municipal electric systems. The MPPA has contracted

REFERENCES FOR POINTS IN HEADNOTE

56 Am Jur 2d, Municipal Corporations, Counties, and Other Politi-
   cal Subdivisions §§ 217, 218.
64 Am Jur 2d, Public Utilities §§ 9, 34, 107.

to acquire an undivided interest in an electric generating plant under construction, and the board and other project participants have contracted with MPPA to purchase various amounts of the electric energy to be produced by the plant. In so doing, the board has not acquired an ownership interest in the plant which would require voter approval, but a right to purchase electric energy.

2. The BWL has not as yet acquired an ownership interest in the generating facility, and cannot do so until the purposes of the MPPA are fulfilled and its bonds and other obligations have been fully paid or satisfied. Even if the board does then, the acquisition would not amount, for constitutional purposes, to the acquisition of a public utility, but would merely extend the capacity of existing facilities.

3. Under the city charter, the board may sell without voter approval machinery or equipment which is no longer useful or which is replaced by new machinery. The complaint does not allege that by entering the contract with MPPA the board has disposed of or will dispose of assets of the BWL in violation of the city charter.

Affirmed.

1. PUBLIC UTILITIES — MUNICIPAL CORPORATIONS — PUBLIC CORPORATIONS — MUNICIPAL ELECTRIC SYSTEMS — JOINT VENTURES.

Agreements between a municipality which operates a municipal electric system and a public corporation created under the Michigan Energy Employment Act of which the municipality is a member under which the municipality agrees to purchase a part of the electric energy to be produced by a generating plant then under construction, in which the public corporation has contracted to acquire an undivided interest which the corporation proposes to finance by the sale of bonds, are not invalid on the ground that the agreements were not approved by the voters of the municipality because the constitutional requirement of approval by the voters applies to acquisitions of public utilities by municipalities and the agreements in question would result in a right to purchase electric energy, or, if the municipality eventually acquires an interest in the plant, in expanding the municipality's existing generating facilities (Const 1963, art 7, § 25; MCL 460.801 *et seq.;* MSA 22.189[1] *et seq.).*

*Klimist, McKnight & Sale, P.C. (by Samuel C. McKnight* and *Roger J. McClow),* for the plaintiffs.

*Noble W. Lee* for the Board of Water and Light and *Dickinson, Wright, Moon, Van Dusen & Freeman* (by *Judson Werbelow, Joseph A. Fink, Kester K. So,* and *John M. Lichtenberg),* for the Michigan Public Power Agency.

*John W. Fitzgerald,* of counsel, for defendants Board of Water and Light and Michigan Public Power Agency.

Amicus Curiae:

*Varnum, Riddering, Wierengo & Christenson* (by *John W. Pestle, Dennis C. Kolenda, Randall W. Kraker,* and *Matthew D. Zimmerman)* for certain Michigan municipalities.

LEVIN, J. The plaintiffs, residents and voters of the City of Lansing, commenced this action against the Board of Water and Light of the City of Lansing and the Michigan Public Power Agency, claiming that contracts entered into by the BWL and the MPPA are invalid because they have not been submitted to and approved by a vote of the Lansing electorate.

The circuit judge entered a summary judgment in favor of defendants on the ground that the plaintiffs had failed to state a claim upon which relief can be granted. We granted leave to appeal prior to decision by the Court of Appeals.

The BWL is an agency of the City of Lansing. MPPA is a public corporation, created pursuant to the Michigan Energy Employment Act of 1976,[1] composed of fifteen cities and three villages, including Lansing, which operate municipal electric systems.

MPPA has entered into a contract with the

---

[1] MCL 460.801 *et seq.;* MSA 22.189(1) *et seq.*

Detroit Edison Company to acquire an undivided 37.22% interest in a 650-plus megawatt coal-fired electric generating plant, Belle River 1, now under construction by Edison. MPPA has also entered into contracts with Edison and Consumers Power Company to acquire undivided ownership interests in certain transmission facilities which will enable the MPPA to transfer to the BWL and other project participants power generated at Belle River 1.

The BWL and the other project participants have entered into contracts with the MPPA to purchase from MPPA electric energy and to pay therefor from electric system revenues amounts based on their percentages of interest of the operating, maintenance, and bond principal and interest expense. The BWL's share is 64.29% of MPPA's 37.22% portion of Belle River 1, and the other members of MPPA share the remaining 35.71%.

MPPA will finance the purchase of the undivided 37.22% interest in Belle River 1 by selling $630,000,000 of revenue bonds.

As a result of these arrangements, BWL may purchase 156 megawatts of electric energy— 64.29% of 37.22% of the 650 megawatt generating capacity of the Belle River 1 plant. The BWL currently operates three coal-fired and two hydro generating facilities with a net capacity for all five facilities of 580 megawatts.

Plaintiffs allege that the BWL intends to shut down, retire, or mothball some of its generating facilities when power is generated and commences on line from Belle River 1 sometime in 1990.

Plaintiffs claim that by participating through the MPPA in the Belle River 1 project, the BWL has "acquired" a "public utility" and that, pursuant to Const 1963, art 7, § 25, the acquisition must

first be approved by three-fifths of Lansing voters.[2] Plaintiffs further assert that by so participating in the project, the BWL has disposed of property "needed to continue the operation" of the BWL, and that the charter of the City of Lansing requires an affirmative vote of three-fifths of the electors before such disposition.[3]

Plaintiffs' claim that the BWL has acquired a public utility is predicated on the argument that the meaning and effect of the contract entered into between the BWL and the MPPA obligating the BWL to purchase electric energy is to vest in the BWL an undivided interest in the generating facilities of Belle River 1. The claim that the BWL has

[2] "No city or village shall acquire any public utility furnishing light, heat or power, or grant any public utility franchise which is not subject to revocation at the will of the city or village, unless the proposition shall first have been approved by three-fifths of the electors voting thereon. No city or village may sell any public utility unless the proposition shall first have been approved by a majority of the electors voting thereon, or a greater number if the charter shall so provide." Const 1963, art 7, § 25.

[3] "The board shall not, unless approved by the affirmative vote of three-fifths of the electors voting thereon at a regular or special city election, sell, exchange, lease, or in any way dispose of any property, easement, equipment, privilege, or asset needed to continue the operation of the board of water and light. The restrictions of this section shall not apply to the sale or exchange of articles of machinery or equipment of the board of water and light which are no longer useful or which are replaced by new machinery for the operation of the board of water and light, or to the exchange of property or easements for other needed property or easements." Charter, City of Lansing, § 5-207.

"Unless approved by the affirmative vote of three-fifths of the electors voting thereon at a regular or special city election, the city shall not sell, exchange, lease, or in any way dispose of any property, easement, equipment, privilege or asset needed to continue the operation of any municipal public utility. All contracts, grants, leases, or other forms of transfer in violation of this section shall be void and of no effect as against the city. The restrictions of this section shall not apply to the sale or exchange of machinery or equipment of any municipally owned public utility, which is no longer useful or which is replaced by new machinery or equipment, or to the leasing of property not necessary for the operation of the utility, or to the exchange of property or easements for other needed property or easements." Charter, City of Lansing, § 8-302.

disposed of property needed to continue the operation of the BWL is based on the same argument[4] and on a prediction that by 1992, nine years from now, the BWL will no longer use some of its present electric generating facilities.

## I

While the MPPA has acquired an undivided ownership interest in the generating facilities of Belle River 1, the members of the MPPA, including the City of Lansing and its agency, the BWL, have not acquired an ownership interest in Belle River 1, but a right to purchase electric energy in accordance with contracts entered into by the participating cities and the MPPA.

The BWL has no immediate prospect of obtaining an undivided interest in the assets of the MPPA. The BWL cannot acquire an undivided interest in the assets of the MPPA before it is determined that the purposes for which the MPPA was formed have been substantially fulfilled and bonds issued and other obligations incurred have been fully paid or satisfied.[5]

The decisions of this Court indicate that even if

---

[4] It is asserted that the contracts between the BWL and MPPA grant MPPA control over the disposition of the BWL's "ownership interest" in the Belle River 1 generating facilities in violation of the city's charter.

[5] Section 46 of the Michigan Energy Employment Act of 1976 provides that when the board of commissioners of a joint agency and the governing bodies of its member municipalities determine that "the purposes for which the joint agency was formed have been substantially fulfilled and that bonds issued and other obligations incurred by the joint agency have been fully paid or satisfied", the board of commissioners and governing bodies "may declare the joint agency to be dissolved", and that on the effective date of such a resolution "title to the funds and other properties" of the joint agency owned by the joint agency at the time of dissolution shall vest in the member municipalities as therein provided. MCL 460.846; MSA 22.189(46).

the BWL had acquired an undivided interest in the Belle River 1 generating facilities, the acquisition of such an interest would not be subject to voter approval because the purchase of power generating facilities which merely extend the capacity of existing utility facilities is not, for purposes of Const 1963, art 7, § 25, the acquisition of a public utility.

In *White v Welsh,* 291 Mich 636; 289 NW 279 (1939), this Court considered the language of the 1908 Constitution[6] corresponding to Const 1963, art 7, § 25, which similarly provided that a city may not acquire a public utility without the affirmative vote of three-fifths of the electors. The Court concluded that the construction of a 30-mile water pipeline between Lake Michigan and Grand Rapids, including pumping and booster stations, was not the acquisition of a public utility. The Court discussed its two earlier decisions construing the language of the constitution. In *Schurtz v Grand Rapids,* 208 Mich 510; 175 NW 421 (1919), the Court had held that voter approval was required where the city had acquired the property and franchises of a company which had been furnishing water to a portion of the inhabitants of a city for a number of years. In *Veldman v Grand Rapids,* 275 Mich 100; 265 NW 790 (1936), the Court had held that voter approval was not required to purchase a power plant to be used as an auxiliary to the city pumping station and lighting plant. Justice BUSHNELL, who dissented in part in *Veldman,* wrote for the Court in *White,* and said of *Veldman:*

"This court affirmed the dismissal of plaintiffs' bill of complaint, dividing only upon the method employed.

---

[6] Const 1908, art 8, § 25.

The court was unanimous on the proposition that the purchase of the power plant was not the acquiring of a public utility but was *only the extension of an existing utility.*" (Emphasis supplied.)

The opinion of the Court in *White* continued:

"There is no difference in principle between the acquiring of a stand-by pumping station and the building of a pipe line from Grand Rapids to Lake Michigan. The property that was to be purchased in the *Schurtz Case* was an *entirely independent water system.*

"The intake crib, pumping stations, pipe line, and increased reservoir capacity *can be used only in connection with, and is but an extension of, the existing water system.*" (Emphasis supplied.)

In the instant case, the power generated by the Belle River 1 facilities will be transmitted over the lines of Edison and Consumers Power Company to the lines of the BWL, and over the lines of the BWL to persons living within the BWL service area. As in *Veldman* and *White,* the increased capacity "can be used only in connection with, and is but an extension of, the existing [electric] system".

We conclude that the BWL has not acquired a public utility within the meaning of Const 1963, art 7, § 25.

II

The plaintiffs claim that by entering into the contracts with the MPPA, the BWL has disposed of or will dispose of assets of the BWL in violation of Lansing's charter.

The charter restrictions, by their terms, apply only to assets "needed to continue the operation of the" BWL and do not apply to the sale of machin-

ery or equipment "no longer useful or which are replaced by new machinery for the operation of the" BWL.

The allegation in plaintiffs' complaint that the "BWL has purchased its interest in Belle River 1 to replace certain of its own electric generating facilities in the future" fails to state a claim upon which relief can be granted because it is not alleged that the BWL has either disposed of or is about to dispose of any asset,[7] or that any asset that might "in the future" be disposed of is "needed to continue the operation" of the BWL, or that any disposition of an asset will not constitute "the sale or exchange of articles of machinery or equipment of the board of water and light which are no longer useful or which are replaced by new machinery for the operation of the board of water and light."[8]

Our disposition makes it unnecessary to consider defendants' argument that the Michigan Energy Employment Act of 1976 was enacted pursuant to Const 1963, art 7, § 28, empowering the Legislature to enact laws authorizing cities to enter into joint contractual undertakings or agreements, and that the act prescribes the only conditions for such joint efforts and that such joint efforts, when authorized by the Legislature, are not subject to referendum unless the Legislature so provides.[9]

As in *Bigger v Pontiac,* 390 Mich 1; 210 NW2d 1 (1973), we direct that no motion for rehearing or

---

[7] See fn 4 and the first two paragraphs of Part I.

[8] In their brief in opposition to defendants' motion for accelerated and summary judgment, plaintiffs said that they had "alleged that defendant BWL will phase out certain of its *antiquated* generating facilities and replace its capacity with its entitlement from Belle River". (Emphasis supplied.)

[9] Section 42(6) of the act provides for a referendum where the full faith and credit of a municipality is pledged. MCL 460.842; MSA 22.189(42).

stay will be entertained by this Court and that final process shall issue forthwith.[10]

Affirmed.

WILLIAMS, C.J., and KAVANAGH, RYAN, BRICKLEY, CAVANAGH, and BOYLE, JJ., concurred with LEVIN, J.

[10] The resolution of the BWL approving the contract between the BWL and the MPPA was adopted on November 23, 1982, following a number of public hearings and meetings extending over the preceding year. The project was the subject of a number of newspaper articles in the Lansing State Journal. It appears that one of the plaintiffs, Alvin Eby, appeared at a July 27, 1982, meeting of the BWL and presented his views in writing to the BWL.

The MPPA adopted a resolution on January 17, 1983, authorizing the issuance of $630,000,000 of revenue bonds, and an application for approval was filed with the Michigan Municipal Finance Commission. The MPPA asserts that it expected to begin marketing the bonds at the end of March, 1983, when this action was commenced on March 24, 1983, requiring a suspension of the bond marketing plans.

Plaintiffs' complaint, filed March 24, 1983, alleged that the MPPA proposes to begin marketing the bonds on or about March 30, 1983, and sought to restrain the sale thereof.

In *Bigger v Pontiac,* 390 Mich 1; 210 NW2d 1 (1973), this Court said that those who wish to prevent, by resort to the courts, the construction of a project dependent on the sale of bonds must avail themselves of judicial processes "in a manner which facilitates an orderly process of adjudication within the given time frame", failing which the courts may, in an appropriate case, even refuse to adjudicate on the merits the claims set forth in the complaint.