WALLED LAKE CONSOLIDATED SCHOOL DISTRICT v
COMMERCE CHARTER TOWNSHIP

Docket No. 102262. Submitted November 9, 1988, at Detroit. Decided
January 18, 1989.

In 1984, Commerce Charter Township and the Commerce Town-
ship Downtown Development Authority decided to adopt and
finance a water supply system under the downtown develop-
ment authority act. A representative of the Walled Lake Con-
solidated School District was present at the meeting where the
township adopted the plan and stated that the school district
was taking a neutral position, neither favoring nor opposing
the plan. The bonds to finance the project were approved in
late 1984 and delivered in January, 1985. In December, 1986,
after the installation of the pipe for the system was completed,
the Walled Lake Consolidated School District filed suit in
Oakland Circuit Court challenging the decisions made by the
township and the Commerce Township Downtown Development
Authority in 1984, claiming that the decision to finance the
project through a tax increment financing plan deprived it of
tax revenue, and seeking to recover that lost revenue. The
court, John N. O'Brien, J., granted summary disposition in
favor of defendants for failure to bring the claim in a timely
manner and dismissed plaintiff's suit with prejudice. Plaintiff
appealed.

The Court of Appeals *held:*

A plaintiff seeking to employ the judicial process to challenge
a project duly adopted by the appropriate government officials
must do so in a timely manner. Waiting two years to enjoin
these defendants' proposed method of collecting revenue or to
compel the payment of revenue to plaintiff is not justified.

Affirmed.

Actions — Bonds — Downtown Development Authority Act —
Limitation of Actions.

A plaintiff who seeks to employ the judicial process to challenge a

References

Am Jur 2d, Public Works and Contracts §§ 234 *et seq.*
See the Index to Annotations under Public Works and Contracts.

project duly adopted by the appropriate government officials under the downtown development authority act must do so in a timely manner, i.e., within the context of the time available for adjudication (MCL 125.1651 *et seq.*; MSA 5.3010[1] *et seq.*).

*Clark, Hardy, Lewis, Pollard & Page, P.C.* (by *Dennis R. Pollard* and *Michael R. Mueller*), for plaintiff.

*Dickinson, Wright, Moon, Van Dusen & Freeman* (by *Robert P. Hurlbert* and *Paul M. Wyzgoski*), for defendants.

Before: CYNAR, P.J., and HOOD and MURPHY, JJ.

PER CURIAM. Plaintiff appeals as of right from an order granting summary disposition in favor of defendants and dismissing plaintiff's suit with prejudice. Summary disposition was granted under *Bigger v City of Pontiac,* 390 Mich 1; 210 NW2d 1 (1973), cert den 415 US 917; 94 S Ct 1415; 39 L Ed 2d 471 (1974), apparently for failure to bring this claim in a timely manner. We affirm.

Plaintiff seeks to challenge defendants' decisions made in 1984, under the downtown development authority act (DDAA), MCL 125.1651 *et seq.*; MSA 5.3010(1) *et seq.*, to adopt and finance a water supply system. The bonds to finance the project were approved in late 1984 and delivered in January, 1985. Plaintiff's claims were brought in December, 1986, the month after the installation of the pipe for the system was completed. Plaintiff basically claims that the decision to finance the project through a tax increment financing plan has deprived it of tax revenue and it seeks to recover that lost revenue.

Under a tax increment financing plan, the authority may finance a project by "capturing" enhanced tax revenues generated by higher property

values brought about by new construction and rehabilitation in the district. Each local taxing jurisdiction, such as plaintiff school district, continues to receive its share of the tax revenue from the district based on an initial assessed value, determined at the time the plan is approved. As property values increase, the incremental revenues resulting from the increased assessed valuations are "captured" by the authority and used to finance its project or to repay the cost of the project. Once the project is completed or all costs are repaid, the surplus tax revenues revert proportionately to the local taxing jurisdictions. MCL 125.1664, 125.1665; MSA 5.3010(14), 5.3010(15).

In *Bigger, supra,* p 5, our Supreme Court concluded that a suit brought to enjoin delivery of bonds one month prior to their scheduled delivery was untimely and affirmed the dismissal of the complaint. Plaintiff would have us limit *Bigger* to its facts as applicable only where plaintiff seeks to enjoin the proposed sale or delivery of bonds on the basis that a challenge to the project now does not have the same time constraints. For us to do so would be a disservice to the *Bigger* rule. *Bigger* and those cases discussing it make it clear that the rule was designed to deal with challenges which could prevent or frustrate public improvements in general. *Bigger, supra,* p 4; *Eby v Lansing Board of Water & Light,* 417 Mich 297, 306, n 10; 336 NW2d 205 (1983); *Langs v City of Pontiac,* 96 Mich App 639, 642; 293 NW2d 659 (1980). *Bigger* requires a plaintiff to seek judicial intervention "within the context of the time available for adjudication." *Supra,* p 5. The appropriate context of time in this situation was before the decisions were made and the plan put into effect. To allow this suit because the bonds have already been sold is not logical or in keeping with the philosophy of

*Bigger.* To review defendants' decisions at this point is to second-guess their right to determine the type of projects needed and the method of financing to be employed.

The Supreme Court cautioned that the *Bigger* rule should be exercised cautiously and only in unusual situations. An unusual situation is present here. The record indicates that plaintiff was sent notice of the plan and was offered the opportunity to meet to discuss the plan as required by MCL 125.1664(4); MSA 5.3010(14)(4). The record does not indicate that the school district ever questioned the proposal or requested further information. The motion hearing transcript indicates that the school district did not even seek to consult with its own general counsel regarding the plan. While plaintiff now claims that the notice was not adequate in describing the fiscal and economic implications as required under the statute, the fact remains that it had the opportunity to raise these concerns prior to the issuance of the bonds and the start of construction.

Plaintiff's reliance on *Alan v Wayne Co,* 388 Mich 210; 200 NW2d 628 (1972), is misplaced. As noted in *Alan,* p 351, the kind of notice required depends on the circumstances of the case. In *Alan,* the published notice of a bond issue had to be sufficiently detailed to allow the taxpayers to at least ask questions regarding the project and to alert them to their right of referendum. *Alan,* pp 335, 342. Here the school district was given notice and had the opportunity to meet with the authority to receive a full explanation of the plan as required by the statute. It had the opportunity to participate in the public hearing and to present its own recommendations. Under these circumstances, it cannot say that it was denied the opportunity to be adequately informed. Furthermore, a represen-

tative of the school district was present at the meeting where the township adopted the plan and stated that the school district was taking a "neutral" position, neither favoring nor opposing. Surely plaintiff cannot be allowed to publicly maintain a "neutral" position prior to the project's going into effect and then challenge the project after it is substantially completed.

That plaintiff couches part of its claim as legal rather than equitable does not distinguish this case from *Bigger.* The import of *Bigger* is that where a plaintiff seeks to employ the judicial process to challenge a project duly adopted by the appropriate government officials, it must do so in a timely manner. *Bigger, supra,* p 4; *Langs, supra,* p 642. In this instance, waiting for two years to enjoin the plan's proposed method of collecting revenue or to compel the payment of revenue to plaintiff is not justified.

Nor does the fact that plaintiff raises a constitutional challenge to the funding mechanism of tax increment financing require a different result. Plaintiff conceded at oral argument that our Supreme Court recently found this method of financing constitutionally valid. *Advisory Opinion on Constitutionality of 1986 PA 281,* 430 Mich 93; 422 NW2d 186 (1988) (reviewing the Local Development Financing Act, MCL 125.2151 *et seq.;* MSA 3.540[351] *et seq.).*

That any revenue has been collected, which may or may not be sufficient to retire the bonds, is not relevant to this claim. That fact might be relevant to a claim regarding the DDAA provisions for the reversion of surplus funds to the other taxing authorities and for the abolishment of the plan if its purposes have been fulfilled. MCL 125.1665(2); MSA 5.3010(15)(2). But those issues are not before this Court.

Given the facts of this case, we find that summary disposition was properly granted under *Bigger.*

Affirmed.