Gloria BYLINSKI, Gloria Bellman, Allan Collins, Dennis Coates, Douglas Hammar, Robin Hammar, Sandra Holiday, Steven Holiday, Robert Jarrell, Anise Pierce, Richard Pressey, Jimmy Seacrist, and Molly Seacrist, and all other persons similarly situated, Plaintiffs,

v.

CITY OF ALLEN PARK, a Michigan municipal corporation, Charter Township of Brownstown, a Michigan municipal corporation, City of Ecorse, a Michigan municipal corporation, City of Lincoln Park, a Michigan municipal corpora-

tion, City of River Rouge, a Michigan municipal corporation, City of Romulus, a Michigan municipal corporation, City of Southgate, a Michigan municipal corporation, City of Taylor, a Michigan municipal corporation, Defendants.

No. Civ.A. 98–71289.

United States District Court,
E.D. Michigan,
Southern Division.

June 9, 1998.

Peter W. Macuga, II, Rene S. Roupinian, Macuga, Swartz and Liddle, Detroit, MI, for plaintiff.

R. Craig Hupp, Charles N. Raimi, Bodman, Longley & Dahling, Detroit, MI, for defendant Cities of Allen Park, Ecorse, Lincoln Park, River Rouge, Romulus, Southgate and Taylor.

Edward M. Zelenak, Lincoln Park, MI, for City of Lincoln Park.

Patrick B. McCauley, Sommers, Schwartz, Silver & Schwartz, Southfield, MI, for City of Taylor.

Victor T. Mitea, Taylor, MI, for City of Ecorse.

John F. Gilhool, Southgate, MI, for City of Southgate.

Kenneth D. Kruse, Pagnucco, Kruse & Tamsen, Allen Park, MI, for City of Allen Park.

David A. Bower, River Rouge, MI, for City of River Rouge.

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

FEIKENS, District Judge.

### I. INTRODUCTION

Plaintiffs Bylinski et al., representative taxpayers in defendant municipalities, bring this action against defendants City of Allen Park et al. to obtain a refund of and to enjoin further collection of property taxes imposed by the municipalities pursuant to a consent decree entered by me on May 12, 1994. *United States v. Wayne County*, Civil Action No. 87–70992 (E.D.Mich.1994) ("*Wayne County* "). The *Wayne County* consent decree references the structure of the *Downriver Sewage Disposal System 1994 Financing Plan and Final Judgment Re: 1994 Court–Ordered Improvements* ("Plan"). It is a comprehensive scheme of sewer improvements intended to bring these defendant municipalities into compliance with the Clean Water Act, 33 U.S.C. §§ 1251 *et seq.*

In 1987, the United States Environmental Protection Agency (EPA) and the Michigan Department of Natural Resources (now MDEQ) brought the Downriver Sewer Case (*Wayne County* ) against Wayne County, owner and operator of the Wyandotte Wastewater Treatment Plant (WWTP). These regulatory agencies added the local government units of thirteen municipalities served by the WWTP, the Southgate–Wyandotte Relief Drainage District, and the Ecorse Creek Pollution Abatement Drain (collectively the "Downriver Communities") as defendants in an amended complaint. Defendant municipalities in the current case are among the Downriver Communities in *Wayne County*.[1] The WWTP is operated by Wayne County pursuant to a contract with the Downriver Communities dated March 1, 1962 (as amended from time to time).

The EPA and MDEQ alleged that the WWTP violated the provisions of the Federal Clean Water Act, 33 U.S.C. §§ 1251 *et seq.*, and the Michigan Water Resources Commission Act, M.C.L. §§ 323.1 *et seq.*, and that the wastewater flows from the Downriver Communities were a major contributing factor in the failure of the WWTP to comply with these Acts. The parties engaged in a court-supervised process to study, design, construct, and fund sewer system improvements intended expeditiously to protect public health and to bring WWTP operations into compliance with the mandates of the Federal Clean Water Act and the Michigan Water Resources Commission Act. A monitor and a special master oversaw the process to insure adequate progress toward achieving project goals, and to report to the court.

In resolution of the claims in *Wayne County*, I entered a Consent Decree (dated February 11, 1994) approving the agreement between the *Wayne County* parties.[2] also entered an order approving the Plan (dated May 12, 1994, effective March 14, 1994). The Plan defines the process by which the improvements constructed pursuant to the Consent Decree will be financed. In para-

1. *See* the record in *United States v. Wayne County*, Case No. 87–70992 (E.D.Mich.), incorporated into the record of the current case by court order at the hearing held on May 21, 1998.

2. Prior to my approval of the Consent Decree each of the Downriver Communities, Wayne County, and the State of Michigan adopted in May, 1993 the original *Wayne County Downriver Collection System Project Plan* ("1993 Project Plan"), proposing certain waste water treatment and sewer improvements, and the Plan. The parties to *Wayne County* have met, and continue to meet, to insure periodic review of project status and to insure that an appropriate schedule is maintained.

graph nine of the *Wayne County* judgment I stated:

> *Need for the Improvements.* This Court specifically finds, based on its review of applicable law and the Project Plan, that (i) the improvements are needed to comply with the Federal Water Pollution Control Act and Act 245; and (ii) the installation, construction, alteration, improvement and operation of the Downriver Sewage Disposal System, as described with the improvements, have been ordered in accordance with the Consent Decree, Act 320, Act 245, and the Federal Clean Water Act.

In their complaint in this action, plaintiffs falsely stated: "There is no other pending or resolved civil action arising out of the transaction or occurrence alleged in this complaint." Notwithstanding that statement, plaintiffs seek to enjoin defendants' compliance with the Plan. Ignoring the *Wayne County* order of May 12, 1994 forbidding litigation of this type, and ignoring the provisions of the Consent Decree reserving continuing jurisdiction of this court in all matters pertaining to the Consent Decree, they brought this action in state court. Defendants removed the case to this court. Plaintiffs claim that property taxes imposed by the municipalities to satisfy the mandates in the Plan are illegal and unconstitutional because the mandates in the Plan run counter to the Headlee amendment to the Michigan Constitution in that the taxes imposed by the defendant communities exceed limits set by state law. They contend that because defendants levy these taxes without the approval of a majority of the qualified voters of the applicable local unit of government, they are not proper levies.

The Headlee amendment states: "Property taxes and other local taxes and state taxation and spending may not be increased above the limitations specified herein without direct voter approval...." MICH. CONST. of 1963, art. 9, § 25 (amended 1978). Article 9, §§ 26–34 of the Michigan Constitution implements the Headlee amendment. The key section states:

> Units of Local Government are hereby prohibited from levying any tax not authorized by law or charter when this section is ratified or from increasing the rate of an existing tax above that rate authorized by law or charter when this section is ratified, without the approval of a majority of the qualified electors of that unit of Local Government voting thereon....

MICH. CONST. of 1963, art. 9, § 31 (amended 1978).

Plaintiffs seek enforcement of their contentions by summary judgment. Defendants reply that plaintiffs' claims are barred by laches, that the Headlee amendment does not apply because the taxes at issue are levied pursuant to statutes that predate that amendment and are levied pursuant to this court's approval of the Consent Decree, and that this court has inherent power to enforce the Consent Decree and the Plan by ordering these local government units to levy taxes, even if these taxes exceed state statutory or constitutional limits.

Defendants also move for summary judgment. I address defendants' motion for summary judgment first.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment must issue when there is no genuine issue as to any material fact, based on the pleadings, depositions, answers to interrogatories, admissions of the parties, and any affidavits. FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Movants have the burden of proving there is no genuine issue of material fact. *Id.* Once movants meet this burden, nonmovants "must set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e). Where movants bring a motion for summary judgment, although the trial court views the evidence in a light most favorable to nonmovants, *Terry Barr Sales Agency, Inc. v. All–Lock Co.*, 96 F.3d 174, 178 (6th Cir.1996) (citation omitted), nonmovants must nonetheless present significant probative evidence to support their claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "The mere existence of a scintilla of evidence in support of the [nonmovants'] position will be insufficient; there must be evidence on which the jury could reasonably find for [nonmovants]." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

### III. ANALYSIS

Defendants seek summary judgment based on three legal premises: (a) laches; (b) the tax levy is not subject to the provisions of the Headlee amendment because the effective dates of the statutes pursuant to which the levy is imposed predate the effective date of that amendment; and (c) federal courts have inherent power to order local government units to levy taxes to pay their debt obligations, even if those taxes exceed state statutory or constitutional tax limits. I address this court's inherent power first.

### A. Federal court's inherent power to order local government unit to levy tax.

In my approval of the Plan, I ordered the Downriver Communities to pay their share costs in cash. However, the order also stated that in the event any community failed to pay in cash, the Plan provides a procedure by which the community's assessing officer shall assess the judgment payments in accordance with M.C.L. § 600.6093. The defendant municipalities in this case did not pay their share costs in cash. Therefore, under the terms of the Plan pursuant to court order, these communities were obligated to levy taxes to pay their share costs.

In *City of Detroit v. City of Highland Park*, 878 F.Supp. 87 (E.D.Mich.1995), I held that a local government tax increase necessitated by a valid federal court judgment is not within the provisions of the Headlee amendment prohibiting unauthorized tax increases. *Id.* at 89. I also held that "state law cannot prevent a federal judge from enforcing his judgments." *Id.*

Plaintiffs' entire case relies on the Michigan Court of Appeals' dismissal of these statements in *American Axle & Mfg., Inc. v. City of Hamtramck*, 227 Mich.App. 135, 143, 575 N.W.2d 296, 299–300 (1997). In *American Axle*, the City of Hamtramck (Hamtramck) appealed from a Michigan Tax Tribunal order granting summary judgment for

American Axle & Manufacturing, Inc. (American) in American's action challenging Hamtramck's tax assessment levied under M.C.L. § 600.6093. The court in *American Axle* affirmed the trial court's decision and stated that despite the ruling in *Detroit, supra,*

> the lack of analysis of the issue of a judgment levy raising taxes beyond the constitutionally proscribed level, along with the [*Detroit*] court's dismissal of further analysis with the statement that Michigan law cannot prevent the enforcement of the federal court's judgment, leads us to believe that Detroit should be of little persuasive value in this matter.

*American Axle*, 227 Mich.App. at 143, 575 N.W.2d 296.

The opinion in *American Axle* is not controlling and is inapposite. *American Axle* refers only to decisions and orders made by *state* courts. That court applied state constitutional limits to the total amount of taxes imposed on property owners, despite its admission that the Headlee amendment did not apply to the statute pursuant to which the additional taxes were imposed. The reasoning in *American Axle* is erroneous and clearly inapplicable in cases in which local government units impose taxes that exceed state constitutional or statutory limitations, pursuant to *federal court orders*. *American Axle* overlooks and disregards federal cases that teach that neither state laws nor state constitutions control a federal court's application or enforcement of federal law. In particular, in its dismissal of the reasoning in *Detroit*, the court in *American Axle* failed to address *Missouri v. Jenkins*, 495 U.S. 33, 110 S.Ct. 1651, 109 L.Ed.2d 31 (1990).

In *Jenkins*, state law authorized the Kansas City, Missouri, School District to assess local property taxes only up to $1.25 per $100 of property valuation unless a majority of the voters in the district approved a higher levy, up to a limit of $3.25 per $100. The statute stated that the school district could assess a levy higher than $3.25 only if two-thirds or more of the voters approved.[3] The United States Supreme Court held that a *federal*

**3.** In a suit brought by a group of students alleging that the State of Missouri operated a segregated school system in the Kansas City metropolitan area, the United States District Court for the Western District of Missouri found that the

school system was indeed segregated, and imposed an increase in the property taxes levied by the Kansas City, Missouri, School District (KCMSD) to insure funding for desegregation of KCMSD'S public schools. In doing so, the Dis-

*district court* could enjoin the operation of state laws or constitutional provisions that prevented a local government unit from raising property taxes *beyond prescribed limits* without an electorate vote, and order the local government unit to levy taxes adequate to fund its obligations under a *federal court order:* "[A] court order directing a local government body to levy its own taxes is plainly a judicial act within the power of a federal court." *Jenkins*, 495 U.S. at 55, 110 S.Ct. 1651 (citing *Griffin v. County Sch. Bd. of Prince Edward*, 377 U.S. 218, 233, 84 S.Ct. 1226, 12 L.Ed.2d 256 (1964)). The Court stated:

> **Griffin followed a long and venerable line of cases in which this Court held that federal courts could issue the writ of mandamus to compel local governmental bodies to levy taxes adequate to satisfy their debt obligations.** *See, e.g., Louisiana ex rel. Hubert v. Mayor and Council of New Orleans*, 215 U.S. 170, 30 S.Ct. 40, 54 L.Ed. 144, ... (1909); *Graham v. Folsom*, 200 U.S. 248, 26 S.Ct. 245, 50 L.Ed. 464 .... (1906); *Wolff v. New Orleans*, 103 U.S. 358, 26 L.Ed. 395, ... (1880); *United States v. City of New Orleans*, 98 U.S. 381, 25 L.Ed. 225, ... (1878); *Heine v. Levee Commissioners*, 86 U.S.(19 Wall.) 655, 657, 22 L.Ed. 223 (1873); *City of Galena v. Amy*, 72 U.S.(5 Wall.) 705, 18 L.Ed. 560 (1866); *Von Hoffman v. City of Quincy*, 71 U.S.(4 Wall.) 535, 18 L.Ed. 403 (186[6] ); *Board of Commissioners of Knox County v. Aspinwall*, 65 U.S.(24 How.) 376, 16 L.Ed. 735 (1860).

*Jenkins*, 495 U.S. at 55–56, 110 S.Ct. 1651 (emphasis added). Addressing the State's argument that even under these cases "the federal judicial power can go no further than to require local governments to levy taxes as authorized under state law," the Court disagreed and noted that "this argument was rejected as early as *Von Hoffman v. City of Quincy* .... " *Id.* at 56, 110 S.Ct. 1651; *Von Hoffman v. City of Quincy*, 71 U.S.(4 Wall.) 535, 18 L.Ed. 403 (1866). Finally, the Court stated, "It is ... **clear that a local government with taxing authority may be ordered to levy taxes in excess of the limit set by state statute where there is reason based in the [United States] Constitution for not observing the statutory limitation."** *Id.* at 57, 110 S.Ct. 1651.

■ The Consent Decree and orders in *Wayne County* remedy the defendant municipalities' violation of federal law. In oral argument on the summary judgment motions in this case, plaintiffs' counsel asserted that the Headlee amendment must violate federal law before a federal court may order a Michigan local government unit to impose taxes that exceed the limitations imposed by that amendment. That is not correct. Under *Jenkins*, when a federal court determines that a *local municipality's actions* violate a federal statute that is based on provisions of the United States Constitution (in this case defendant municipalities violated the Federal Clean Water Act, 33 U.S.C. §§ 1251 *et seq.*, enacted by Congress empowered by provisions in the Constitution), the court may order a local government unit with taxing authority to levy taxes adequate to satisfy the municipality's debt obligations incurred in complying with federal law, even if the taxes exceed state constitutional and statutory limitations. In other words, *Jenkins* permits a federal court to enjoin operation of state statutes and constitutional provisions prohibiting a local government unit from levying taxes at a rate above limits set by state law without majority electorate approval.[4]

trict Court enjoined the operation of an amendment to the state constitution that prohibited the level of taxation needed to fund the desegregation.

The Court of Appeals for the Eighth Circuit affirmed the District Courts findings of liability and its remedial order in most respects. The Supreme Court granted certiorari to consider the State of Missouri's argument that the District Court lacked the power to raise local property taxes. The Supreme Court held that the District Court abused its discretion in directly imposing the tax increase. However, the Court also held that a District Court has the power to order a local government unit to impose a tax increase adequate to fund its obligations under a federal court order, and to enjoin operation of state laws or constitutional provisions that prohibit the tax increase.

4. More generally, a federal court's power to interpret and apply federal law despite conflict with state statutory or constitutional provisions is supported by the Supremacy Clause. *See Washington v. Washington State Commercial Passenger Fishing Vessel Ass'n*, 443 U.S. 658, 695, 99 S.Ct. 3055, 61 L.Ed.2d 823 (1979) (stating that no rule of state law may prohibit any person from com-

Thus, the defendant municipalities' tax levies are valid and enforceable, even if the Headlee amendment would otherwise apply.

### 1. Constitutional basis: General health and welfare.

█ The United States Constitution grants Congress the power to provide for the general welfare of the United States. U.S. Const., art. I, § 8, cl. 1. In H.R.REP. No. 89–215 (1965), U.S.Code Cong. & Admin.News 1965, p. 3313, the Committee on Public Works, to whom a bill to amend the Federal Water Pollution Control Act (now known as the Clean Water Act, 33 U.S.C. §§ 1251 *et seq.*) to establish the Federal Water Pollution Control Administration was referred, stated:

> No more important single problem faces this country today than the problem of "good water." Water is our greatest single natural resource. The issue of pure water must be settled now **for the benefit not only of this generation but for untold generations to come. The need for good quality water for all of our Nation's uses—public and private—is a paramount one.**
>
> \*   \*   \*   \*   \*   \*
>
> The Committee on Public Works has been fully aware of this basic problem and from this committee came the first legislation that brought into full focus this problem of water pollution and water quality.

H.R.REP. No. 89–215, at 1 (1965)U.S.Code Cong. & Admin.News 1965, p. 3313 (emphasis added). This states Congress' intention that this Act protect, and improve, the general welfare of the United States. In *United States v. Aluminum Co. of Am.*, 824 F.Supp. 640 (E.D.Tex.1993), the court notes that "[t]he objective of the [Clean Water Act] is **to protect human health, welfare, and the environment, to eliminate the discharge of all pollutants to waters of the United States, and to restore the chemical, physical, and biological integrity of the Nation's waters."** *Id.* at 645 (citing 33 U.S.C. § 1251(a)). Thus, this court's enforcement of the consent decree to levy taxes to correct water pollution problems pursuant to the

plying with a federal district court's decree, provided the decree involves interpretation or appli-

provisions of the Clean Water Act (despite a state statutory limitation on taxation) has a Constitutional basis, and is valid under the *Missouri v. Jenkins* reasoning.

### 2. Constitutional basis: Commerce Clause.

█ Congress may use its power under the Commerce Clause to regulate interstate commerce and any matter that might significantly impact on interstate commerce, including pollution of the navigable waters of the United States. U.S. Const., art. I, § 8, cl. 3; *See, e.g., United States v. Holland,* 373 F.Supp. 665, 671–73 (M.D.Fla.1974) **(stating Congress intended to use the full extent of the commerce power under the Constitution to protect and improve the waters of the United States).** One commentator notes that "[f]ederal authority under the commerce clause is extensive. Activities can be regulated under the clause because of their effect on interstate commerce." FRANK F. SKILLERN, ENVIRONMENTAL PROTECTION DESKBOOK § 4.04 (2d ed.1995). This includes activities resulting in pollution of the waters of the United States, such pollution having an effect on, or the potential to effect, interstate commerce. Congress' commerce power is another Constitutional basis for this court's enforcement of a local government unit tax levy to satisfy the mandates of the Clean Water Act, despite state statutory or constitutional limitations on taxation.

### B. Laches.

█ Plaintiffs' claims are also barred by laches. "To demonstrate laches, a party must establish '(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense.'" *Apache Survival Coalition v. United States,* 21 F.3d 895, 905 (9th Cir.1994) (quoting *Costello v. United States,* 365 U.S. 265, 282, 81 S.Ct. 534, 5 L.Ed.2d 551 (1961)); *S.E.R., Jobs For Progress, Inc. v. United States,* 759 F.2d 1, 5 (Fed.Cir.1985); *Environmental Defense Fund v. Tennessee Valley Auth.,* 468 F.2d 1164, 1182 (6th Cir.1972) (stating: "To prevail, appellants must show

cation of federal law).

that plaintiffs unreasonably delayed in bringing suit and that appellants were prejudiced by this delay. . . ."). "The application of the laches doctrine is within the sound discretion of the district court." *Azalea Fleet, Inc. v. Dreyfus Supply & Mach. Corp.*, 782 F.2d 1455, 1458 (8th Cir.1986) (citing *Gardner v. Panama R.R.*, 342 U.S. 29, 30, 72 S.Ct. 12, 96 L.Ed. 31 (1951)).

■ Here, defendants correctly assert that plaintiffs waited to institute their suit until after bonds had been issued and sold. Indeed, the project addressed by the *Wayne County* consent decree and related orders is 85% compete. Through publication and public hearings, plaintiffs had ample notice of defendants' intentions to finance the project through bond sales. Yet plaintiffs did not bring this suit until three years after first being assessed for the cost of the sewer and waste water treatment improvements, after more than $220 million in bonds had been sold, and after the improvement project was 85% completed. Plaintiffs' delay clearly prejudices defendant municipalities. For this reason, it is inequitable to enforce plaintiffs' claims against defendants; they are barred by laches.

■ Notably, although Michigan law does not control in this action, it does apply to plaintiffs' Headlee amendment claim and is consistent with federal case law. Michigan law states that where a plaintiff's claims are untimely, a court may "refuse to adjudicate on the merits the claims set forth in the complaint." *Eby v. Bd. of Water & Light of City of Lansing*, 417 Mich. 297, 306 n. 10, 336 N.W.2d 205 (1983) (citing *Bigger v. City of Pontiac*, 390 Mich. 1, 210 N.W.2d 1 (1973)). The doctrine of laches is an equitable principle that bars recovery in circumstances in which a plaintiff's delay in seeking judicial remedy prejudices a defendant. "Laches is not the mere passage of time, but is rather the passage of time combined with a change in condition which would make it inequitable to enforce a claim against the defendant." *Tray v. Whitney*, 35 Mich.App. 529, 536, 192 N.W.2d 628 (1971). However, statutes of limitation may apply by analogy to equitable claims. *Taxpayers Allied for Constitutional Taxation v. Wayne County*, 450 Mich. 119, 127 n. 9, 537 N.W.2d 596 (1995).

Michigan courts have applied the laches doctrine to bar Headlee claims. *See Bigger v. City of Pontiac*, 390 Mich. 1, 4–5, 210 N.W.2d 1 (1973) (stating that in cases holding that in the financing of public projects by municipalities, if objecting plaintiffs do not resort to the courts "within the context of the time available for adjudication" and without delay, courts may refuse to hear the cases); *Sessa v. Macomb County*, 220 Mich.App. 279, 286–88, 559 N.W.2d 70 (1996) (stating that even though plaintiffs brought suit within an applicable one year statute of limitations pursuant to M.C.L. § 600.308a(3), identical to the statute of limitations for Headlee-type claims, the suit was barred by laches). As interpreted by the court in *Sessa*, the preclusive doctrine of laches, detailed in *Bigger*, 390 Mich. at 4–5, 210 N.W.2d 1, "is designed to deal with challenges that could prevent or frustrate public improvements in general." *Sessa*, 220 Mich.App. at 286, 559 N.W.2d 70. The court in *Sessa* also noted:

> An equally important aspect of the *Bigger* rule comes into play here where suit was not begun until *after* the bonds had been issued and sold on the open market. The interests of third parties, the bondholders, who are bona fide purchasers for value and who, at the time of purchase, were not on notice of any such challenge, represents a vested interest that the entertaining of such litigation on its merits could defeat. In this regard, therefore, the *Bigger* rule is distinct from the statute of limitations and simply obligates those who would challenge such action to move promptly.

*Sessa*, 220 Mich.App. at 287, 559 N.W.2d 70 (citing *Walled Lake Consol. Sch. Dist. v. Charter Township of Commerce*, 174 Mich. App. 434, 436–37, 437 N.W.2d 16 (1989)) (emphasis in original).

*Sessa* noted that although the *Bigger* rule predates the 1978 Headlee amendment to the Michigan constitution, it is not undermined by that amendment.

> Nothing in the text of Const 1963, art 9, §§ 25–34 addresses the *Bigger* principle or purports to limit or abolish it in taxpayers [sic] suits authorized by Const 1963, art 9, § 32 [the standing/enforcement provision]. The Legislature has carefully protected

taxpayer interest in this regard, however, in fulfillment of the mandate of Const 1963, art 9, § 34, by requiring notice of intent to bond to be published, M.C.L. § 123.958b(3); MSA 5.301(8b)(3).

*Sessa,* 220 Mich.App. at 287, 559 N.W.2d 70. *Bigger* applies even if plaintiff's claim is legal rather than equitable.

That plaintiff couches part of its claim as legal rather than equitable does not distinguish this case from *Bigger.* The import of *Bigger* is that where a plaintiff seeks to employ the judicial process to challenge a project duly adopted by the appropriate government officials, it must do so in a timely manner.... In this instance, waiting for two years to enjoin the plan's proposed method of collecting revenue or to compel the payment of revenue to plaintiff is not justified.

*Walled Lake Consol. Sch. Dist.,* 174 Mich. App. at 438, 437 N.W.2d 16. Thus, both Federal and Michigan laches doctrine bar plaintiffs' claims.

### C. Tax levy not subject to the provisions of the Headlee amendment.

■ When laches prevents a suit, the court need not consider constitutional challenges in that case. *Thatcher Enterprises v. Cache County Corp.,* 902 F.2d 1472, 1475–76 (10th Cir.1990) (stating that because plaintiffs waited seventeen years from the time they should have known, and nine years from the time they actually knew, of the County's actions to make challenges to a zoning ordinance, plaintiffs' constitutional challenges were barred by laches); *Peter Henderson Oil Co. v. City of Port Arthur, Texas,* 806 F.2d 1273, 1275 (5th Cir.1987) (stating that because appellants waited over five years after the cause of action arose to challenge an unconstitutional delegation, the challenge was barred by laches); *see also Edel v. Filer Township,* 49 Mich.App. 210, 211 N.W.2d 547 (1973). I nevertheless address plaintiffs' constitutional (Headlee amendment) challenges under Michigan law.[5]

In oral argument, plaintiffs' counsel began with a misinterpretation of the Headlee amendment, stating that "Michigan law is

clear, at section thirty-one of the Headlee amendment to [the] Michigan Constitution, that any tax not in existence on November 7th, 1978, or authorized to exist by ordinance or statute is unconstitutional if not approved by the people before imposition and collection." A correct reading of the Headlee amendment, MICH. CONST. art. 9, § 31 (ratified Nov. 7, 1978, effective Dec. 23, 1978), is that *it prohibits local government units from levying any tax not authorized by law or charter, and from increasing the rate of an existing tax above that rate authorized by law or charter, existing when the amendment was ratified, without approval of a majority of the electorate of that local government by vote.*

■ The Headlee amendment "does not apply to taxes imposed for the payment of principal and interest on bonds or other evidence of indebtedness or for the payment of assessments on contract obligations in anticipation of which bonds are issued which were authorized prior to the effective date of this amendment." MICH. CONST. art. 9, § 31. The requirement that the tax be authorized by law or charter requires only that "a local government be *empowered* to levy the tax on the date that the Headlee Amendment was ratified, even if the local government had not exercised its authority." *Bailey v. Muskegon County Bd. of Comm'rs,* 122 Mich.App. 808, 821, 333 N.W.2d 144 (1983) (emphasis in original).

■ If Michigan law controlled in this case, the Headlee amendment would still not apply to the taxes levied because the levies are authorized by Act 320 (the Court Order Bond Act), amended and recodified as M.C.L. § 324.4307, and Act 326 (the Judgment Levy Act), amended and codified as M.C.L. § 600.6093. Both statutes were in effect before ratification of the Headlee amendment. The 1994 Financing Order and Final Judgment Plan and Consent Decree in the *Wayne County* case make explicit reference to these statutes.

---

5. Because plaintiffs' predominant claim is that the taxes imposed by defendant municipalities are prohibited by the Headlee amendment, clari-

ty suggests that it be addressed. I do so notwithstanding my holding that the Headlee amendment does not apply as heretofore discussed.

### 1. Act 320 (M.C.L. § 324.4307) predates the Headlee amendment.

The Headlee amendment does not apply because Act 320 predates it. The Court Order Bond Act (Act 320), M.C.L. § 324.4307, was originally enacted in 1927, long before ratification of the Headlee amendment. M.C.L. § 324.4307 empowers the defendants in this case to levy taxes for the purposes enumerated in the *Wayne County* 1994 Financing Plan and Final Judgment (sewage system and water treatment facilities construction, improvements, and operation). That defendants did not actually levy taxes until some date after ratification of the Headlee amendment is irrelevant. Defendant municipalities were authorized by law to impose such a tax prior to ratification of that amendment. Thus, by the terms of both the Headlee amendment and M.C.L. § 324.4307 the taxes levied in this case are not subject to Headlee amendment restrictions.

The tax assessments levied against property owners in the defendant municipalities are imposed pursuant to Act 320. The Plan and Consent Decree make explicit reference to Act 320 as a statute pursuant to which the taxes at issue would be imposed:

> The Court may enter as required an order pursuant to said Act 320 regarding the terms and conditions of the contracts, bonds and other documents to be executed and delivered by the legislative bodies of Defendant in accordance with this paragraph, provided such order in no way alters, modifies, or conflicts with the deadlines, obligations, or items set forth in this Decree or set forth by *applicable* federal or state law.

*Wayne County* Consent Decree, Section XIV, Funding ¶ 49 (emphasis added). The Wayne County and Downriver Communities financing resolutions reference this statute. "WHEREAS, Wayne [County] proposes to authorize the issuance of the Bonds, pursuant to Act 320 in anticipation of and secured payments by the Judgment payments ... and other things necessary to the authorization and issuance of the Bonds under Act 320 having been provided for...." Wayne County Resolution 94–81, pp. 3–4 (February 17, 1994).

Act 320, M.C.L. § 324.4307, permits local government units to issue and sell the necessary bonds to fund "construction, installation, alteration, operation, or improvement, including the treatment works, and other facilities" of a "sewage system, solid waste facility, or waterworks system." M.C.L. § 324.4307(1).

> The amount of the bonds either issued or outstanding shall not be included in the amount of bonds which the local unit or units of government are authorized to issue under any statutes of this state or charters. *Local units of government issuing bonds under this section may raise a sum annually by taxation as the legislative body or respective legislative bodies consider necessary to pay interest on the bonds, and to pay the principal as it falls due. The annual amount may be in excess of the authorized annual tax rate fixed by the statutes or charters.*

M.C.L. § 324.4307(1) (emphasis added). This section also states: "Court ordered bonds do not require approval of the electors.... Bonds other than court ordered bonds issued under this part require approval of the electors at a general or special election only if an appropriate petition is filed in accordance with the law." M.C.L. § 324.4307(2). Thus, not only is the funding scheme in the Consent Decree authorized by this statute, it is also specifically exempted from Headlee amendment requirements. Voter approval is not required under circumstances in which local government units, pursuant to court order and this statute, issued and sold bonds to fund sewage and water works system improvements to effectuate compliance with federal law.

### 2. Act 236 (M.C.L. § 600.6093) predates the Headlee amendment.

The Headlee amendment does not apply because Act 236 predates it. The Judgment Levy Statute, Act 236, originally enacted in 1963, and later amended, empowers municipalities to assess taxes necessary to pay judgments against the municipalities or officers of the municipalities in their name of office. M.C.L. § 600.6093. The statute predates the Headlee amendment, and therefore is not controlled by the restrictions of that amendment. *See City of Detroit v. City of*

*Highland Park,* 878 F.Supp. 87, 89 (E.D.Mich.1995).

*Bailey v. Muskegon County Bd. of Comm'rs,* 122 Mich.App. 808, 821, 333 N.W.2d 144 (1983), supports exemption of this statute from the Headlee amendment requiring electorate approval. "The Headlee Amendment imposes specific limitations on the authority to impose additional taxes without voter approval. It does not require voter approval of increased tax levies where the authority to make the levy has already been approved." *Smith v. Scio Township,* 173 Mich.App. 381, 388, 433 N.W.2d 855 (1988) (citing *Bailey*). As discussed in section III(A), *supra,* federal law overrides state law in the instant case, and supports the defendant municipalities' imposition of taxes that exceed Michigan constitutional limitations, in compliance with my orders. However, even if Michigan law applied, because the taxes levied pursuant to the *Wayne County* 1994 Financing Plan and Final Judgment were levied pursuant to statutes enacted prior to ratification of the Headlee amendment, those tax levies are not subject to voter approval or other limitations imposed by that amendment, and plaintiffs' claim must be denied.

The Plan specifically refers to Act 236 as a statute authorizing the imposition of taxes on property owners in resolution of the defendant municipalities' debt obligations as determined in *Wayne County:*

> With respect to any Downriver Community that does not pay its Judgment Payment ... *in cash* prior to the closing date for the sale of Wayne's bonds a certified copy of this 1994 Financing Plan and Final Judgment shall be filed with the assessing officer of each Downriver Community that is a city ... pursuant to Section 6093 of Act 236 ... and this 1994 Financing Plan and Final Judgment.

*Wayne County* 1994 Financing Plan and Final Judgment, ¶ 8, p. 12.

In oral argument plaintiffs' counsel asserted that my order pursuant to Act 320 and Act 236 must be minimally intrusive. In *Wayne County* I did this when I ordered the municipalities to pay their share costs in cash. I did not restrict the methods by which they might procure this cash. I could not have given a less intrusive order.

My order directing defendant municipalities to levy taxes to pay their costs became effective only if they did not pay their share costs in cash. Although plaintiffs' assertions implicitly assume that I could not order the levy of taxes until after an actual violation of the minimally intrusive order, nowhere in *Jenkins* does the Supreme Court state that a federal court must wait until a local government unit violates its minimally intrusive orders to delineate contingent orders to enforce its judgment. *See Missouri v. Jenkins,* 495 U.S. 33, 110 S.Ct. 1651, 109 L.Ed.2d 31 (1990).

## CONCLUSION

Defendants are entitled to summary judgment on three legal premises: (a) the inherent power of federal courts to order local government units to levy taxes to pay their debt obligations, to carry out federal court ordered and approved consent decrees and their financing plans, even if those taxes exceed state statutory or constitutional tax limits; (b) laches; and (c) inapplicability of the Headlee amendment.

**IT IS SO ORDERED.**