*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

WEST BRANCH DISTRICT LIBRARY,

        Plaintiff-Appellant,

v

WEST BRANCH TOWNSHIP, a municipal corporation, and WEST BRANCH DOWNTOWN DEVELOPMENT AUTHORITY, a public body corporate,

        Defendants-Appellees.

UNPUBLISHED
December 21, 2023

No. 361790
Ogemaw Circuit Court
LC No. 21-651959-CZ

Before: RIORDAN, P.J., and MURRAY and M. J. KELLY, JJ.

PER CURIAM.

Plaintiff, West Branch District Library, appeals as of right the trial court's order denying its motion for summary disposition and granting summary disposition in favor of defendants, West Branch Township and West Branch Downtown Development Authority ("DDA"), pursuant to MCR 2.116(C)(8). The sole issue before us is whether defendants are statutorily permitted to "capture" some of the millage revenue designated for plaintiff, or whether that revenue must exclusively be appropriated to plaintiff. We agree with plaintiff that defendants are not statutorily permitted to capture any of the millage revenue at issue. Therefore, we reverse the trial court and remand to that court for further proceedings.

## I. FACTS

On December 17, 2021, plaintiff filed its complaint against defendants, alleging as follows. Plaintiff is a district library, defendant West Branch Township is a municipal corporation, and defendant DDA is a public body corporate established by defendant West Branch Township pursuant to the Recodified Tax Incremental Financing Act ("RTIFA"), MCL 125.4101 *et seq*. In August 2018, electors approved a renewal of a previously authorized millage of .40 specifically

-1-

for plaintiff's purposes. That renewal was for a period of 10 years, from 2020 to 2029.[1] In 2021, however, defendant West Branch Township declined to appropriate $8,001.83 of the millage revenues to plaintiff, instead "capturing" it for defendant DDA.[2] According to plaintiff, while the RTIFA does allow a municipal corporation to capture some millage revenues designated for a district library, the municipal corporation generally may do so only if the millage was approved by electors before January 1, 2017. And, in this case, the millage was approved in August 2018. As a result, defendants were not statutorily permitted to capture the millage revenue at issue. Plaintiff requested appropriate monetary and equitable relief.

The parties and the trial court quickly understood that this case only involves a question of statutory interpretation, so in April 2022, the parties filed competing motions for summary disposition. Defendants, in their motion and brief for summary disposition, observed that the "Library Millage Proposal" from May 2009 stated as follows:

> Shall the West Branch District Library, County of Ogemaw, levy an amount not to exceed .4 mill ($.40 on each $1,000 dollars of taxable value) against all taxable property within the West Branch District Library District for a period of ten (10) years, 2010 to 2019, inclusive, to provide funds for all District Library purposes authorized by law; and shall the District Library levy such new additional millage for said purpose; the estimate of the revenue the District Library will collect if the millage is approved and levied by the Library in the 2010 calendar year is approximately $119,500? A small portion of the revenue collected from Ogemaw Township (approximately $600 in 2010) will be subject to capture by the Ogemaw Township Downtown Development Authority.

Further, the "Library Millage Renewal" from August 2018 stated as follows:

> Shall the West Branch District Library, County of Ogemaw, be authorized to levy a renewal of the previously voted increase in the tax limitation, which expires in 2019, in an amount not to exceed .40 mill ($.40 on each $1,000 of taxable value) against all taxable property within the West Branch District Library district for a period of ten (10) years, 2020 to 2029, inclusive, for the purpose of providing funds for all district library purposes authorized by law? The estimate of the revenue the District Library will collect in the first year of levy (2020) if the millage is approved and levied by the District Library is approximately $148,000.

According to defendants, when MCL 125.4201 and MCL 125.4203 of the RTIFA are read together, the library millage at issue (i.e., the .4 mills) may only be exempt from capture if it was approved after December 31, 2016, and in this case, it was originally approved in May 2009. In

---

[1] The original millage was approved in May 2009 and was for a period of 10 years, from 2010 to 2019.

[2] In February 2014, defendant DDA issued bonded indebtedness in the amount of $330,000 with a maturity date of November 1, 2028. The purpose of the bond was to fund sidewalk improvements and street lighting.

other words, the August 2018 renewal did not constitute an independent, "separate millage," as that term is found in the statutes, that would be exempt from capture.

Plaintiff, on the other hand, argued that the .4 mills were approved in August 2018, which was after the December 31, 2016 cutoff date established by the RTIFA. Thus, plaintiff contended, the currently imposed .4 mills are statutorily exempt from capture under the RTIFA.

The trial court, in its opinion from the bench, agreed with defendants. Specifically, the trial court agreed with defendants that the .4 mills renewed in August 2018 do not constitute a "separate millage" because they were originally imposed in May 2009:

> Now, looking at that [statutory] language and the exceptions, I – The language is, in and of itself, unambiguous but the words do carry specific meaning. Looking at the arguments that the – I've come to the conclusion that the plaintiff seems to either gloss over and/or ignore – ignore or is confused by the words "separate millage." They seem to be saying that the 2020 renewal was a separate millage but in the court's interpretation, it is not. It is a renewal of an existing millage from 2009. The 2018 vote on the library millage was not a new separate millage but rather a renewal of an existing millage approved in 2009 . . . .

The trial court accordingly entered an order granting defendants' motion for summary disposition pursuant to MCR 2.116(C)(8) and denying plaintiff's motion for summary disposition.

Plaintiff now appeals.

## II. STANDARD OF REVIEW

"Appellate review of a motion for summary disposition is de novo." *Gyarmati v Bielfield*, 245 Mich App 602, 604; 629 NW2d 93 (2001). Summary disposition is appropriate under MCR 2.116(C)(10) when, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law."[3] "Issues of statutory interpretation are reviewed de novo." *City of Riverview v Sibley Limestone*, 270 Mich App 627, 630; 716 NW2d 615 (2006).

## III. DISCUSSION

Plaintiff argues that the trial court erred by ruling that the .4 mills, which were originally approved in May 2009 and renewed in August 2018, are currently subject to "capture" by defendants under the RTIFA. We agree.

---

[3] While the trial court cited MCR 2.116(C)(8), because it considered matters outside the pleadings—the language of the millage proposals—we review the case under the standard applicable to MCR 2.116(C)(10). See *Silberstein v Pro-Golf of Am, Inc*, 278 Mich App 446, 457; 750 NW2d 615 (2008).

The following facts are undisputed and sufficient to resolve this case: (1) in May 2009, the electors approved a .4 millage for plaintiff, effective from 2010 to 2019; (2) in February 2014, defendant DDA issued bonded indebtedness in the amount of $330,000 with a maturity date of November 1, 2028; and (3) in August 2018, the electors renewed the .4 millage for plaintiff, effective from 2020 to 2029. Defendants seek to capture some of the revenues generated by the .4 mills post-2020.

In *Walled Lake Consolidated Sch Dist v Charter Twp of Commerce*, 174 Mich App 434, 435-436; 437 NW2d 16 (1989), this Court explained the operation of "tax increment financing" as follows:

> Under a tax increment financing plan, the [development] authority may finance a project by "capturing" enhanced tax revenues generated by higher property values brought about by new construction and rehabilitation in the district. Each local taxing jurisdiction, such as plaintiff school district, continues to receive its share of the tax revenue from the district based on an initial assessed value, determined at the time the plan is approved. As property values increase, the incremental revenues resulting from the increased assessed valuations are "captured" by the authority and used to finance its project or to repay the cost of the project. Once the project is completed or all costs are repaid, the surplus tax revenues revert proportionately to the local taxing jurisdictions. [Citations omitted.]

Currently, tax increment finance authorities are governed by the RTIFA, effective January 1, 2019. See 2018 PA 57.[4] MCL 125.4201(cc)(*iii*)(D)(III) of the RTIFA provides as follows:

> (cc) "Tax increment revenues" means the amount of ad valorem property taxes and specific local taxes attributable to the application of the levy of all taxing jurisdictions upon the captured assessed value of real and personal property in the development area, subject to the following requirements:
>
> * * *
>
> (*iii*) Tax increment revenues do not include any of the following:
>
> * * *
>
> (D) Ad valorem property taxes levied under 1 or more of the following or specific local taxes attributable to those ad valorem property taxes:
>
> * * *

---

[4] 2018 PA 57 simultaneously repealed several other acts governing essentially the same subject matter, such as the Local Development Financing Act, MCL 125.2151 *et seq*., and the Neighborhood Improvement Authority Act, MCL 125.2911 *et seq*.

(III) Except as otherwise provided in [MCL 125.4203(3)], ad valorem property taxes or specific local taxes attributable to those ad valorem property taxes levied for a separate millage for public library purposes approved by the electors after December 31, 2016.

Simply put, and the parties do not dispute, defendants may only capture a proportionate amount of the .4 mills at issue if that millage does not fall within the scope of MCL 125.4201(cc)(*iii*)(D)(III). If the millage does fall within the scope of MCL 125.4201(cc)(*iii*)(D)(III), then defendants may not capture any of it.

To resolve this question, this Court must not only consider MCL 125.4201(cc)(*iii*)(D)(III), but also MCL 125.4203(3), as the latter statute is incorporated within the former. MCL 125.4203(3) provides, in relevant part:

. . . If a separate millage for public library purposes was levied before January 1, 2017, and all obligations and other protected obligations of the authority are paid, then the levy is exempt from capture under this part, unless the library board or commission allows all or a portion of its taxes levied to be included as tax increment revenues and subject to capture under this part under the terms of a written agreement between the library board or commission and the authority. . . . For ad valorem property taxes or specific local taxes attributable to those ad valorem property taxes levied for a separate millage for public library purposes approved by the electors after December 31, 2016, a library board or commission may allow all or a portion of its taxes levied to be included as tax increment revenues and subject to capture under this part under the terms of a written agreement between the library board or commission and the authority. . . .

According to defendants, the .4 mills satisfy the following sentence of MCL 125.4203(3): "If a separate millage for public library purposes was levied before January 1, 2017, and all obligations and other protected obligations of the authority are paid, then the levy is exempt from capture under this part . . . ." In other words, defendants argue that the .4 mills were levied in May 2009 (i.e., before January 1, 2017), that the .4 mills were merely renewed in August 2018 and, as a result, they are not exempt from capture because the obligations of defendant DDA are not yet paid.

According to plaintiff, the .4 mills satisfy MCL 125.4201(cc)(*iii*)(D)(III), which exempts from capture "ad valorem property taxes levied for a separate millage for public library purposes approved by the electors after December 31, 2016." Plaintiff reasons that the .4 mills, for the purposes of this case, were "approved by the electors after December 31, 2016" when they were renewed in August 2018. Further, plaintiff reasons, while plaintiff could "allow all or a portion of its taxes levied to be included as tax increment revenues and subject to capture under this part," MCL 125.4203(3), it has not done so.

We agree with plaintiff. As an initial matter, the trial court and defendants err by considering the words "separate millage" in isolation. The words "separate millage," as used in MCL 125.4201(cc)(*iii*)(D)(III) and MCL 125.4203(3), are part of a singular term, "separate millage for public library purposes." Under Michigan's municipal taxing scheme, for the purposes

of this case, a public library may be funded either by appropriations from a municipality's general fund, or by an independently itemized millage.[5]  See, e.g., MCL 397.183(2) ("All or part of the money necessary for the establishment and operation of a district library may be supplied by a tax levied by the district library on the taxable property in the district.").  See also MCL 397.213(2) ("A township, city, or village may pay for the use of library services contracted for under subsection (1) by levying a tax not to exceed 2 mills of its state equalized valuation, by use of money from the municipality's general fund, or with money received under Act No. 59 of the Public Acts of 1964 . . . .").  Thus, the term "separate millage for public library purposes" essentially refers to an independently itemized and voted-upon millage (i.e., a "separate" millage) for public library purposes, as contrasted with a general municipal millage, some of which may be earmarked for public library purposes.[6]

With that in mind, resolution of this issue is straightforward.  Under MCL 125.4201(cc)(*iii*)(D)(III), "ad valorem property taxes or specific local taxes attributable to those ad valorem property taxes levied for a separate millage for public library purposes approved by the electors after December 31, 2016" presumptively are exempt from capture unless an exception in MCL 125.4203(3) applies.  Here, the electors "approved" .4 mills for public library purposes in both May 2009 and August 2018.  Indeed, the August 2018 renewal must have constituted an 'approval' by the electors because, if it did not, the .4 mills would have expired in 2019, and this case would not be before this Court.  Thus, the .4 mills are presumptively exempt from capture under MCL 125.4201(cc)(*iii*)(D)(III) because they were "approved by the electors after December 31, 2016."

Further, there is no exception in MCL 125.4203(3) that would change this outcome.  That statute contains two exceptions that may be applicable to this case.  First, "[i]f a separate millage for public library purposes was levied before January 1, 2017, and all obligations and other protected obligations of the authority are paid, then the levy is exempt from capture under this part . . . ."  Second, "[f]or ad valorem property taxes or specific local taxes attributable to those ad valorem property taxes levied for a separate millage for public library purposes approved by the electors after December 31, 2016, a library board or commission may allow all or a portion of its taxes levied to be included as tax increment revenues and subject to capture under this part under the terms of a written agreement between the library board or commission and the authority . . . ."

The first exception, read in isolation, seems to support defendants' argument because the .4 mills were originally levied in May 2009, i.e., before January 1, 2017, and the obligations of defendant DDA are not yet paid.  However, when the first exception is read in tandem with MCL

---

[5] A public library also may be funded by both general-fund appropriations and an independently itemized millage, but that possibility is not relevant for this discussion.  There are additional sources of funding for libraries, such as penal fines, see MCL 397.32, but those sources also are not relevant for this discussion.

[6] That is, the word "separate," when found within the term "separate millage for public library purposes," does not refer to the presence or absence of an earlier chronological link.  Stated otherwise, the statute does not refer to a "*new* millage for public library purposes," but rather, a "*separate* millage for public library purposes."  In this context, that distinction is critical.

125.4201(cc)(*iii*)(D)(III), the statutory scheme becomes clearer. Under MCL 125.4201(cc)(*iii*)(D)(III), a separate millage for public library purposes that is approved after December 31, 2016, presumptively is exempt from capture. And, under the first exception, a separate millage for public library purposes that is approved before January 1, 2017, also is exempt from capture, but only in more limited circumstances. In other words, there is a clear distinction between these two dates, such that a millage approved on or after January 1, 2017, is presumptively exempt from capture, and a millage approved on or before December 31, 2016, is presumptively not exempt from capture unless the obligations of the authority are paid. The first exception would be implicated if there was no approval of the millage after December 31, 2016. However, in this case, the electors did approve the millage after December 31, 2016. Thus, the first exception does not apply to render the .4 mills subject to capture.

Nor does the second exception apply to render the .4 mills subject to capture. Under the second exception, when a separate millage for public library purposes is approved after December 31, 2016—as it was in this case—a library board or commission may enter into a written agreement providing that some or all of the millage is subject to capture, notwithstanding that the entire millage is presumptively exempt from capture under MCL 125.4201(cc)(*iii*)(D)(III). Because plaintiff did not enter into such an agreement, this exception does not apply.

Accordingly, the trial court erred by ruling that the .4 mills at issue are subject to capture by defendants under the RTIFA.[7]

IV. CONCLUSION

The .4 mills at issue are not subject to capture by defendants because the RTIFA generally does not allow for capture when a library millage is approved after December 31, 2016, and no exception applies here that would remove this case from the general rule. Therefore, we reverse the trial court and remand to that court for summary disposition in favor of plaintiff. We do not retain jurisdiction.

/s/ Michael J. Riordan
/s/ Christopher M. Murray
/s/ Michael J. Kelly

---

[7] Having so concluded, we need not reach plaintiff's alternate argument that extra-textual sources favor its interpretation of the RTIFA.